**FILED**

AUG - 6 2009

# United States Court of Appeals for the Fourth Circuit

| Name of Movant | Prisoner Number | Case Number |
|---|---|---|
| James H. Roane, Jr. | 32923-083 | (leave blank) |
| **Place of Confinement** | | 09-8 |
| USP Terre Haute | | |

IN RE:   James H. Roane, Jr.                                           , MOVANT

1. Name and location of court which entered the judgment of conviction from which relief is sought:

   US District Court for the Eastern District of Virginia

2. Parties' Names:   US                                        vs.   James H. Roane, Jr.

3. Docket Number: _____   4. Date Filed:   August 6, 2009

5. Date of judgment of conviction:   February 3, 1993         6. Length of sentence:   Death

7. Nature of offense(s) involved (all counts):

   Murder

8. What was your plea? (Check one)      ☑ Not Guilty      ☐ Guilty      ☐ Nolo Contendere

9. If you pleaded not guilty, what kind of trial did you have? (Check one)   ☑ Jury   ☐ Judge only

10. Did you testify at your trial? (Check one)      ☐ Yes      ☑ No

11. Did you appeal from the judgment of conviction? (Check one)      ☑ Yes      ☐ No

12. If you did appeal, what was the

    Name of court appealed to:   Fourth Circuit Court of Appeals

    Parties' names on appeal:   US                     vs.   James H. Roane, Jr.

    Docket number of appeal:   93-4005-4007, 4009, 4010   Date of decision:   7/8/96

    Result of appeal:   Affirmed

13. Other than a direct appeal from the judgment of conviction and sentence, have you filed any other petitions, applications for relief, or other motions regarding this judgment in any federal court?      ☑ Yes      ☐ No

RECEIVED 2009 AUG -6 PM 1:24 FOURTH CIRCUIT COURT OF APPEALS

14. If you answered "Yes" to question 13, answer the following questions:

A. FIRST PETITION, APPLICATION, OR MOTION

(1) In what court did you file the petition, application, or motion? US District Court

(2) What were the parties' names? US vs. James H. Roane, Jr.

(3) What was the docket number of the case? 97CV895

(4) What relief did you seek? New Trial and Sentencing

(5) What grounds for relief did you state in your petition, application, or motion?

(6) Did the court hold an evidentiary hearing on your petition, application or motion? ☑ Yes ☐ No

(7) What was the result? ☑ Relief granted ☐ Relief denied on the merits

☐ Relief denied for failure to exhaust ☐ Relief denied for procedural default

(8) Date of court's decision: 5/1/03

B. SECOND PETITION, APPLICATION, OR MOTION

(1) In what court did you file the petition, application, or motion?

(2) What were the parties' names? vs.

(3) What was the docket number of the case?

(4) What relief did you seek?

(5) What grounds for relief did you state in your petition, application, or motion?

(6) Did the court hold an evidentiary hearing on your petition, application or motion? ☐ Yes ☐ No

(7) What was the result? ☐ Relief granted ☐ Relief denied on the merits

☐ Relief denied for failure to exhaust ☐ Relief denied for procedural default

(8) Date of court's decision:

C. THIRD AND SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS
For any third or subsequent petition, application, or motion, attach a separate page providing the information required in items (1) through (8) above for first and second petitions, applications, or motions.

D. PRIOR APPELLATE REVIEW(S)

Did you appeal the results of your petitions, applications, or motions to a federal court of appeals having jurisdiction over your case? If so, list the docket numbers and dates of final disposition for all subsequent petitions, applications, or motions filed in a federal court of appeals.

| | | | | |
|---|---|---|---|---|
| First petition, application, or motion | ☐ Yes | Appeal No. _____ | ☐ No |
| Second petition, application, or motion | ☐ Yes | Appeal No. _____ | ☐ No |
| Subsequent petitions, applications or motions | ☐ Yes | Appeal No. _____ | ☐ No |
| Subsequent petitions, applications or motions | ☐ Yes | Appeal No. _____ | ☐ No |
| Subsequent petitions, applications or motions | ☐ Yes | Appeal No. _____ | ☐ No |
| Subsequent petitions, applications or motions | ☐ Yes | Appeal No. _____ | ☐ No |

If you did not appeal from the denial of relief on **any** of your prior petitions, applications, or motions, state which denials you did not appeal and explain why you did not.

15. Did you present any of the claims in this application in any previous petition, application, or motion for relief under 28 U.S.C. § 2254 or § 2255? (Check one)          ☐ Yes          ☑ No

16. If your answer to question 15 is "Yes," give the docket number(s) and court(s) in which such claims were raised and state the basis on which relief was denied.

17. If your answer to question 15 is "No," why not? This Court will grant you authority to file in the district court only if you show that you could not have presented your present claims in your previous § 2254 or § 2255 application because . . .

    A. (For § 2255 motions only) the claims involve "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found [you] guilty"; or,

    B. (For § 2254 petitions only) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [you] guilty of the offense"; or,

    C. (For both § 2254 and § 2255 applicants) the claims involve "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court [of the United States], that was previously unavailable."

I did not present the following claims in any previous petition, application, or motion for relief under 28 U.S.C. § 2254:

*See Petition.*

I did not present the claims listed above in any previous petition, application, or motion because

*See Petition*

Movant prays that the United States Court of Appeals for the Fourth Circuit grant an Order Authorizing the District Court to Consider Movant's Second or Successive Application for Relief Under 28 U.S.C. §§ 2254 or 2255.

_____
Movant's Signature

I declare under Penalty of Perjury that my answers to all questions in this Motion are true and correct. Executed

on        _____8 - 6 - 09_____
                    [date]

_____
Movant's Signature

## PROOF OF SERVICE

A copy of this motion and all attachments must be sent to the state attorney general (§ 2254 cases) or the United States Attorney for the United States judicial district in which you were convicted (§ 2255 cases).

I certify that on   _____8 - 6 - 09_____   I mailed a copy of this motion and all attachments
                              [date]

to   _____Dana   J.   Boente_____   at the following address:

_600  E.  Main  Street,  Ste. 1800  Richmond, VA_

_____
Movant's Signature

- 4 -

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

IN RE JAMES H. ROANE, Jr., MOVANT    : No. 09-___ 8 ___

## MOTION FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER SECOND PETITION FOR WRIT OF HABEAS CORPUS

James Roane, through counsel, moves pursuant to 28 U.S.C. §§ 2244 & 2255, and Local Rule of Appellate Procedure 22(d), for an order authorizing the District Court to consider his second petition for a writ of habeas corpus. In addition to his habeas petition and the accompanying appendix, which set forth the compelling evidence of Mr. Roane's innocence and the Constitutional violations that led to his capital conviction and death sentence despite his innocence, Mr. Roane states the following:[1]

## PROCEDURAL HISTORY

Mr. Roane was tried, with several co-defendants, in the United States District Court for the Eastern District of Virginia on an indictment charging each with several crimes, including murder in furtherance of a "continuing criminal enterprise." According to the indictment, the defendants' activities took place over several years, but Mr. Roane's participation lasted just two and one-half months. Mr. Roane received several sentences of life imprisonment without parole, and a single death

---

[1]All emphasis herein is supplied unless otherwise indicated. Parallel citations usually are omitted.

sentence, for the murder of Douglas Moody. This Circuit affirmed. <u>United States v. Tipton, et. al.</u>, 90 F.3d 861 (4th Cir. 1996), <u>cert. denied</u>, 520 U.S. 1253 (1997).

Mr. Roane sought relief under 28 U.S.C. § 2255. After an evidentiary hearing, the District Court granted a new trial on the Moody murder, the sole offense for which death was imposed, finding trial counsel constitutionally ineffective in failing to investigate and present evidence that Mr. Roane had an alibi for the Moody killing. <u>United States v. Roane</u>, No. 3:92CR68 (E.D.Va. May 1, 2003). This Circuit reversed, and reinstated the conviction and death sentence for the Moody murder. <u>United States v. Roane</u>, 378 F.3d 382 (4th Cir. 2004), <u>cert. denied</u>, 546 U.S. 810 (2005).

Mr. Roane now seeks authorization from this Court for the filing of a second § 2255 petition. The proposed § 2255 petition, attached hereto, seeks relief solely from the Moody murder conviction and death sentence. It does not challenge any of the other convictions or sentences.

## ARGUMENT:   THIS COURT SHOULD AUTHORIZE THE FILING OF A SECOND HABEAS PETITION

This Court should authorize the filing of a second habeas petition.

**A.** **The legal standard** for authorization of a second habeas petition by a federal prisoner is set forth in § 2255(h)(1), which states that

> [a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain–(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense[,]

and in § 2244(b)(3)(C), which states that this Court should authorize filing a second petition "if it determines that the application makes a *prima facie* showing that the application satisfies the requirements of this subsection."

In short, under §§ 2244(b)(3)(C) & 2255(h), this Court will authorize filing of a second habeas petition if there is (1) "a *prima facie* showing" of (2) "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense."

(1) This Circuit has described a *"prima facie* showing" in this context:

> By *"prima facie* showing" we understand ... simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.... If in light of the documents submitted with the [PFA [pre-filing authorization] motion] it appears reasonably likely that the [motion] satisfies the stringent requirements for the filing of a second or successive petition, we shall grant the [motion].

In re (Billy) Williams, 330 F.3d 277, 281 (4th Cir. 2003) (quoting Bennett v. United States, 119 F.3d 468, 469-70 (7th Cir. 1997)); accord In re Lott, 366 F.3d 431, 432 (6th Cir. 2004) (adopting same standard and stating that *"prima facie* showing" "is not a difficult standard to meet"); Bell v. United States, 296 F.3d 127, 128 (2d Cir. 2002) (adopting same standard and stating that *"prima facie* showing is not a particularly high standard"); In re Holladay, 331 F.3d 1169, 1173-74 (11th Cir. 2003) (same); see also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("burden of establishing a *prima facie* case ... is not onerous"); St. Mary's

3

Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (*prima facie* showing is "minimal");

BLACK'S LAW DICTIONARY, *prima facie* (8th ed. 2004) ("At first sight; on first

appearance but subject to further evidence or information").

As in any context where the Court considers the existence *vel non* of a *prima*

*facie* showing, the Court should not make credibility determinations adverse to Mr.

Roane. See Johnson v. California, 545 U.S. 162, 171 n.7 (2005) (assessment of *prima*

*facie* showing "can involve no credibility assessment") (quoting St. Mary's Honor

Ctr., 509 U.S. at 509-10). Instead, credibility determinations and the ultimate finding

of whether Mr. Roane has satisfied § 2255(h) are left to the District Court, after an

appropriate evidentiary hearing. See 28 U.S.C. § 2244(b)(4) ("district court shall

dismiss any claim presented in a second or successive application that the court of

appeals has authorized to be filed unless the applicant shows that the claim satisfies

the requirements of this section").

(2)     In determining whether Mr. Roane has made a *prima facie* showing that

he can present evidence "sufficient to establish by clear and convincing evidence that

no reasonable factfinder would have found [him] guilty," the Court should consider

guidance given by Sawyer v. Whitley, 505 U.S. 333 (1992), and Schlup v. Delo, 513

U.S. 298 (1995), which interpreted identical language from pre-AEDPA court-made

rules, see Schlup, 513 U.S. at 301 ("Under Sawyer, the petitioner must show 'by clear

and convincing evidence that ... no reasonable juror would have found the petitioner'

guilty."); and by Williams v. Taylor, 529 U.S. 420 (2000), which interpreted identical

language in 28 U.S.C. § 2254(e)(2)(B).

First, "the analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence." Schlup, 513 U.S. at 328. Thus, in determining if Mr. Roane has made the requisite *prima facie* showing of innocence, the Court must take into account that the government bears a heavy burden of proving guilt. Id.

Second, the standard set forth in § 2255(h) "falls short of the Jackson standard governing habeas review of claims of insufficiency of the evidence. See Jackson v. Virginia, 443 U.S. 307, 324 (1979) ("[N]o rational trier of fact *could* have found proof of guilt beyond a reasonable doubt")." Schlup, 513 U.S. at 323 n.38 (emphasis in Schlup). "Thus, though under Jackson the mere existence of sufficient evidence to convict would be determinative of petitioner's claim, that is not true under" Sawyer and § 2255(h). Schlup at 330 & n.49.

Third, in a capital case, the requisite showing of innocence is made "upon a showing, by clear and convincing evidence, that no reasonable factfinder would have found [Mr. Roane] guilty of *capital* murder." Williams, 529 U.S. at 440.

**B.     This Court should authorize the filing** under the above-described standards. Mr. Roane has made a prima facie showing of innocence. The details of Mr. Roane's new evidence are set forth in the § 2255 Petition filed along with this application. In sum:

Mr. Roane's proffer establishes that Keith Barley, not Mr. Roane, killed

Douglas Moody. The proffer of new evidence includes a disinterested eyewitness who will testify that she saw Keith Barley, not Mr. Roane, kill Mr. Moody; three witnesses, including Mr. Barley's best friend, who will testify that Mr. Barley confessed to them that he killed Mr. Moody because Mr. Moody owed Mr. Barley money for drugs; a witness who will testify that Mr. Barley, with gun in hand, kicked in a door looking for Mr. Barley an hour before the killing, seeking to collect on a drug debt; and several witnesses who will testify that Mr. Barley was a violent drug dealer who worked as an "enforcer" for drug dealer Peyton Maurice Johnson.

Mr. Roane's proffer also establishes that the three government trial witnesses who connected Mr. Roane to the Moody murder are incredible and could not have been testifying truthfully. The proffer of new evidence includes strong new impeachment information for each witness, and objective scientific and factual evidence establishing that these witnesses could not have been telling the truth when they implicated Mr. Roane in the Moody murder.

In addition to showing that Mr. Roane is entirely innocent of the Moody murder, Mr. Roane's proffer also establishes that Mr. Roane is innocent of "capital murder," Williams, 529 U.S. at 440, even if it is falsely assumed that Mr. Roane killed Mr. Moody.

Mr. Roane's death-eligibility for the Moody murder was premised upon 21 U.S.C. 848(e)(1)(A), which states that "any person engaging in or working in furtherance of a continuing criminal enterprise ... who intentionally kills or counsels,

6

commands, induces, procures, or causes the intentional killing of an individual and such killing results ... may be sentenced to death." The government cannot establish § 848(e)(1)(A) merely by showing that the defendant committed a murder while he was part of a continuing criminal enterprise ("CCE"). Instead, the government must prove there was a "*substantive connection*" between the killing and the CCE, i.e., that the killing was committed "*in furtherance of the CCE's purposes*." United States v. Tipton, Johnson & Roane, 90 F.3d 861, 887 (4th Cir. 1996); accord United States v. Stitt, 250 F.3d 878, 885 n.6 (4th Cir. 2001) (same); United States v. Peterson, 210 F.3d 363, 2000 WL 305137, *4-*5 (4th Cir. March 24, 2000) (Table, text in Westlaw) (same; killing must be "working to promote or advance the interests of" the CCE). At trial, the government claimed that the "substantive connection" to the CCE, establishing death-eligibility under § 848(e)(1)(A), was that Mr. Moody was a rival drug dealer and that Mr. Roane and Mr. Tipton killed Mr. Moody for that reason.

Petitioner's proffer of new evidence shows that Mr. Moody was *not* a rival drug dealer – he was not a drug dealer at all. Instead, he was a drug addict who was killed by Keith Barley because he owed Mr. Barley money for drugs. Thus, the new evidence shows Mr. Moody's murder had no "substantive connection" to the CCE for which Mr. Roane was convicted and, thus, Mr. Roane is innocent of capital murder, even if it is falsely assumed that Mr. Roane killed Mr. Moody.

The trial evidence for Mr. Roane's guilt of the Moody murder "was neither undisputed nor overwhelming." District Court Opinion of May 1, 2003, at 10. At the

first § 2255 hearing, Mr. Roane presented evidence supporting an alibi, further undermining confidence in Mr. Roane's guilt. Mr. Roane's proffered "newly discovered evidence ..., if proven and viewed in light of the evidence as a whole" will "establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of the offense" of killing Douglas Moody. Mr. Roane should be affored an evidentiary hearing in the District Court at which he can present, and the District Court can assess, his evidence of innocence.

C. **There is no statute of limitations, § 2255(f), barrier to this Court's authorization.** Under the plain language of §§ 2244 & 2255, the Court of Appeals does not consider possible statute of limitations issues in deciding whether to authorize a District Court filing. Instead, as set forth above, this Court's inquiry is limited to determining if there is a "a *prima facie* showing" of "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. §§ 2244(b)(3)(C), 2255(h).

The absence of statute of limitations considerations from this Court's authorization-to-file determination is consistent with the fact that "AEDPA's limitations period is an affirmative defense, and [a § 2255 petitioner] [i]s not required to allege in his petition facts that could refute the defense." United States v. Blackstock, 513 F.3d 128, 133 (4th Cir. 2008) (citing Hill v. Braxton, 277 F.3d 701,

706 (4th Cir. 2002)).  Thus, AEDPA's limitations period can become an issue only *after* the petition is filed in the District Court, if the government elects to raise a limitations defense.  It is not at issue at this juncture.

In accord with the affirmative defense nature of the statute of limitations, this Circuit repeatedly has held that District Courts, not the Court of Appeals, should address limitations issues in the first instance.

For example, in Blackstock, supra, this Circuit remanded a § 2255 case where the district court erroneously had dismissed the § 2255 petition as successive when it should have been treated as a first petition; the government asserted as an alternative ground for affirmance that the petition was untimely; and this Circuit held that the government's limitations arguments should first be addressed in the District Court.  Blackstock, 513 F.3d at 133.  This Circuit explained:

> It does appear from the information before us that AEDPA's one-year limitations period would prevent Blackstock from obtaining relief under § 2255 .... Nonetheless, AEDPA's limitations period is an affirmative defense, and Blackstock was not required to allege in his petition facts that could refute the defense. ... Under these circumstances, it would be improper for us affirm the dismissal of Blackstock's petition on timeliness grounds. ... Instead, we must remand to the district court so that Blackstock may present whatever evidence he might have and the district court can determine in the first instance whether Blackstock's § 2255 petition was timely filed.

Blackstock, 513 F.3d at 133.

This Circuit reached the same conclusion in In re (Jackie) Williams, 444 F.3d 233 (4th Cir. 2006), a § 2254 case, and again allowed the District Court in the first

instance to consider the evidence and arguments for and against timeliness:

> The State contends that Williams' application should be denied because any habeas petition filed at this point would be barred by the one-year statute of limitations ... [I]t is preferable for the district court to consider in the first instance the timeliness of a petition, including the question of whether Williams might be entitled to equitable tolling of the statute of limitations. See United States v. Battles, 362 F.3d 1195, 1198 (9th Cir. 2004) ("[E]quitable tolling issues are highly fact-dependent, and ... the district court is in a better position to develop the facts and assess their legal significance in the first instance ...." (internal quotation marks omitted)).

444 F.3d at 237 n.*; see also United States v. McQueen, 229 F.3d 1145, 2000 WL 1186983 (4th Cir. Aug. 22, 2000) (text on Westlaw) (remanding § 2255 case for District Court to consider possible equitable tolling issues); United States v. Brouwer, 34 Fed.Appx. 924, 2002 WL 1011523 (4th Cir. May 20, 2002) (same); United States v. Sexton, 56 Fed.Appx. 202, 2003 WL 601443 (4th Cir. Feb. 28, 2003) (same).

Here, too, the proper approach is for this Court to authorize the filing of Mr. Roane's § 2255 petition, based upon the prima facie showing that he can establish his innocence under § 2255(h), and allow the District Court to address timeliness issues if they are raised by the government.

While the statute of limitations is not before this Court at this juncture, we note, in an abundance of caution, that Mr. Roane has a strong argument, never addressed in this Circuit, that any possible statute of limitations problem is overcome by his innocence. Thus, even if it were appropriate for this Court to consider limitations issues now, a remand is required so Mr. Roane can present his evidence of innocence

to the District Court.

This Court has held that AEDPA's limitations period for federal prisoners, § 2255(f), is subject to equitable tolling. United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000) (citing Harris v. Hutchinson, 209 F.3d 325, 328-30 (4th Cir. 2000)).[2] While this Circuit has not addressed the role of innocence in this context, the "majority of the courts of appeals which have addressed this question have allowed for equitable tolling based on actual innocence under certain circumstances." Souter v. Jones, 395 F.3d 577, 597 (6th Cir. 2005) (citing cases).

In Souter, the Sixth Circuit held that a showing of innocence under the standard of Schlup v. Delo, 513 U.S. 298 (1995), and Murray v. Carrier, 477 U.S. 478 (1986), allows consideration of the merits of claims in an otherwise untimely habeas petition.[3]

The Sixth Circuit's discussion of this issue in Souter is cogent, and should be adopted by this Court, if this Court were to consider the statute of limitations at this juncture. We therefore recount Souter's analysis in some detail.

---

[2]Harris held that AEDPA's limitations period for *state* prisoners, § 2244(d)(1), is subject to equitable tolling. Relying on Harris, Prescott reached the same result for § 2255(f). This identical outcome for § 2244(d)(1) and § 2255(f) is not surprising, since the relevant language is materially identical in both sections. If anything, § 2255(f) presents a stronger case for equitable tolling than § 2244(d)(1), since tolling for federal prisoners does not raise the federal-state comity concerns presented by tolling for state prisoners.

[3]Souter considered the limitations period for state prisoners, § 2244(d)(1), but explained that its "holding also applies to the similar limitations period established in § 2255, which governs prisoners in federal custody." 395 F.3d at 597 n.12.

11

In <u>Schlup</u>, the Supreme Court "held that a claim of actual innocence can be raised 'to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims.'" <u>Souter</u>, 395 F.3d at 588 (quoting <u>Schlup</u> at 326-27). "To establish actual innocence [under <u>Schlup</u>], 'a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>Souter</u>, 395 F.3d at 590 (quoting <u>Schlup</u> at 327).

After <u>Schlup</u>, Congress enacted AEDPA, which "codified an actual innocence exception to the procedural bar on successive habeas petitions," <u>see</u> § 2255(h)(1), and also in certain provisions applicable only to state prisoners. <u>Souter</u>, 395 F.3d at 589, 590 n.5. The innocence exception for successive petitions codified in AEDPA is "more stringent" than <u>Schlup</u> because it requires the showing by "clear and convincing" evidence, while <u>Schlup</u> requires the showing only by a preponderance. <u>Souter</u>, 395 F.3d at 589, 590 n.5; <u>see</u> part A, <u>supra</u> (discussing § 2255(h)(1) standard).

> The adoption of a narrower actual innocence exception in these ... specific instances [in AEDPA] did not alter the general <u>Schlup</u> actual innocence standard applicable in cases involving *other types* of procedural default. Accordingly, after AEDPA, [federal courts] have continued to apply the <u>Schlup</u> actual innocence standard unless the case falls within one of the ... statutorily-defined areas [such as § 2255(h)(1)] requiring the heightened standard.

<u>Souter</u> at 590 n.5 (citing <u>Calderon v. Thompson</u>, 523 U.S. 538, 558 (1998)).[4]

---

[4]For Mr. Roane, it does not matter if the innocence exception to the statute of limitations is governed by <u>Schlup</u> ("more likely than not that no reasonable juror would have found petitioner guilty") or § 2255(h)(1) ("clear and convincing evidence

After carefully considering AEDPA's statutory language, legislative history and purpose, the Sixth Circuit concluded that, "[b]ecause the interests that must be balanced in creating an exception to the statute of limitations are identical to those implicated in the procedural default context, we see no reason not to apply the <u>Schlup</u> standard in the tolling context." <u>Souter</u> at 590 n.5 (quoting <u>Doe v. Menefee</u>, 391 F.3d 147, 161 (2d Cir. 2004)). The Sixth Circuit explained:

> In interpreting a statute, we presume that Congress legislates against the background of existing jurisprudence unless it specifically negates that jurisprudence. ... [I]n enacting AEDPA, Congress was working against the jurisprudential background of <u>Murray v. Carrier</u> and <u>Schlup v. Delo</u>, in which the Supreme Court held that a showing of actual innocence, defined as more likely than not that no reasonable juror would vote to convict, was sufficient to overcome a procedurally-defaulted habeas petition. Congress adopted a more stringent actual innocence exception in AEDPA's successive-petition and [state prisoner] evidentiary-hearing provisions .... The fact that Congress adopted a narrower actual innocence exception in these two provisions is indicative, not of Congress's desire to exclude the exception with regards to the limitations period, but rather of its intent to limit the scope of the exception in those two specific areas. The more reasonable inference to be drawn from the absence of an exception in [the statute of limitations provisions] is that Congress intended not to alter the existing jurisprudential framework which allowed for a showing of actual innocence to overcome a procedural default.
> Following the passage of AEDPA, the courts of appeals ... have continued to apply the <u>Schlup</u> actual innocence exception to cases involving other types of procedural default, such as where the default is based on adequate and independent state-law grounds. ... Of course, these procedural limitations existed prior to AEDPA, and therefore,

that no reasonable factfinder would have found the movant guilty"), since Mr. Roane satisfies the § 2255(h)(1) standard for the reasons stated in parts A-B above.

13

Congress, which did not address them in the statute, did not alter the application of the <u>Schlup</u> actual innocence exception to them. By contrast, AEDPA's limitations provisions were an entirely new legislative creation, and thus, the determinative issue is whether Congress, in creating this new procedural limitation, intended for the existing jurisprudence governing habeas procedural limitations to apply. While the limitations provisions were new federal law, many states had already established statutes of limitations in post-conviction proceedings. Moreover, the Supreme Court had already held that where a habeas petitioner had defaulted on his federal claims in state court by failing to file timely in post-conviction proceedings, "federal habeas review of the claims is barred unless the prisoner can demonstrate ... that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). Thus, five years prior to the enactment of a federal statute of limitations, it was already well established that a procedural default resulting from an untimely filing could be excused by a federal habeas court "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Carrier</u>, 477 U.S. at 496. Absent evidence of Congress's contrary intent, there is no articulable reason for treating habeas claims barred by the federal statute of limitations differently. ... [W]e conclude that against the backdrop of the existing jurisprudence and in the absence of evidence to the contrary, Congress enacted this new procedural limitation consistent with the <u>Schlup</u> actual innocence exception. Therefore, equitable tolling of the one-year limitations period based on a credible showing of actual innocence is appropriate.

Furthermore, the inclusion of an actual innocence exception to the limitations provisions is consistent with the underlying principles of AEDPA. As the conference report stated, one of the purposes of the act was "to curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases." H.R. Conf. Rep. No. 104-518, at 111 (1996), reprinted in 1996 U.S.C.C.A.N. 944, 945. Inclusion of an actual innocence exception to the limitations provisions does not foster abuse and delay, but rather recognizes that in extraordinary cases the societal interests of finality, comity, and conservation of scarce judicial resources "must yield to the imperative of correcting a fundamentally unjust incarceration." <u>Carrier</u>,

> 477 U.S. at 495 (internal citations omitted). As the Supreme Court has stated, "[t]he miscarriage of justice standard is altogether consistent ... with AEDPA's central concern that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence." Calderon v. Thompson, 523 U.S. 538, 558 (1998).

Souter, 395 F.3d at 498-600.

As further support for the conclusion that a Schlup innocence showing overcomes the statute of limitations, Souter explained that "denying federal habeas relief from one who is actually innocent would be constitutionally problematic" under the Eighth Amendment, the Due Process Clause and the Suspension Clause, Art. I, § 9, cl. 2 ("Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it"). Souter, 395 F.3d at 601 (citing cases). "In light of these grave constitutional concerns," and the other matters discussed above, Souter concluded that "equitable tolling of the statute of limitations based on a credible showing of actual innocence is appropriate." Id. at 602.

Other Courts of Appeal similarly have recognized the strong arguments for an innocence exception to AEDPA's limitations period, and the "grave constitutional concerns," that would be raised by "denying federal habeas relief from one who is actually innocent," Souter, 395 F.3d at 601-02, but have reserved the legal question and remanded for development of a full factual record and appropriate findings under Schlup by the District Court. E.g., Wyzkowski v. Department of Corrections, 226 F.3d 1213 (11th Cir. 2000); Majoy v. Roe, 296 F.3d 770 (9th Cir. 2002); Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004).

15

In <u>Majoy</u>, for example, the District Court dismissed Majoy's habeas petition as untimely after rejecting his argument, without allowing an evidentiary hearing, "that the 'actual innocence gateway' of <u>Schlup</u> ... was available to him to overcome his untimeliness." 296 F.3d at 773. The Court of Appeals reviewed Majoy's proffer and concluded that, if allowed an evidentiary hearing, "Majoy *may be able to muster a plausible factual case* meeting the" <u>Schlup</u> standard. 296 F.3d at 775.

> If he does, the question to be answered is whether surviving the rigors of this gateway has the consequence of overriding AEDPA's one-year statute of limitation, a legal question not yet decided by this Circuit or the Supreme Court. If the answer to this question is in the affirmative, then his otherwise-barred claims must be heard on the merits.
>
> This important legal question, however, is not appropriately addressed by us in a hypothetical context. Unless and until Majoy establishes under examination and adversarial testing to the satisfaction of the appropriate factfinder that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," <u>Schlup</u>, 513 U.S. at 327, ... we express no opinion on either issue.
>
> Thus, as the Supreme Court observed in <u>Schlup</u>: "The fact-intensive nature of this inquiry, together with the District Court's ability to take testimony from the few key witnesses if it deems that course advisable, convinces us that the most expeditious procedure is ... to remand to the District Court for further proceedings consistent with this opinion." <u>Schlup</u>, 513 U.S. at 332.

<u>Majoy</u>, 296 F.3d at 776 (footnote and citations omitted). The Courts of Appeal took the same approach in <u>Wyzkowski</u> and <u>Doe</u>.

As set forth above, statute of limitations issues are not before the Court at this juncture. Should the Court disagree, however, the Court should take the approach of

the Sixth Circuit, hold that a <u>Schlup</u> innocence showing overcomes any statute of limitations barrier, and allow the District Court to make appropriate findings under <u>Schlup</u>, should the government elect to raise a limitations defense. In the alternative, the Court should adopt the approach of the Second, Ninth and Eleventh Circuits, and reserve the legal question until after the District Court makes appropriate findings under <u>Schlup</u>, should the government elect to raise a limitations defense.

Respectfully submitted,

BILLY H. NOLAS, ESQ.
SHAWN NOLAN, ESQ.
ANGELA ELLEMAN, ESQ.
Assistant Federal Defenders
Federal Community Defender Office
  for the Eastern District of Pennsylvania
Suite 545 West - The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

PAUL F. ENZINNA, ESQ.
Baker Botts, LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7752

Counsel for Petitioner James H. Roane, Jr.

17

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

IN RE JAMES H. ROANE, Jr., MOVANT  : No. 09-_____

## CERTIFICATE OF SERVICE

I, Billy H. Nolas, Esq., hereby certify that on this 6th day of August, 2009, I caused the *Motion for Order Authorizing District Court to Consider Second Petition for Writ of Habeas Corpus* in the above-captioned case to be served by U.S. Mail, first class, on the following person:

Dana J. Boente
United States Attorney for the Eastern District of Virginia
600 E. Main Street
Suite 1800
Richmond, VA 23219

Billy H. Nolas, Esq.