# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA   )

  )

      Plaintiff - Respondent   )     Case No. 09-8

  )

      v.   )     (3:92-cr-00068-JRS)

  )

JAMES H. ROANE, JR.   )

  )

      Defendant - Movant.   )

**GOVERNMENT'S RESPONSE TO BRIEF OF AMICUS
IN SUPPORT OF JAMES H. ROANE, JR.'S MOTION
FOR ORDER AUTHORIZING DISTRICT COURT
<u>TO CONSIDER SECOND PETITION FOR WRIT OF HABEAS CORPUS</u>**

COMES NOW the United States, by counsel, and herewith responds to the

"Brief of Amicus Curiae the Innocence Network in Support of Movant James H.

Roane Jr.'s Motion for Order Authorizing District Court to Consider Second

Petition for Writ of Habeas Corpus." In response to Amicus' brief, the

government states the following.

1. The brief of Amicus recites a limited history of this case beginning

with the decision of the district court in 2003. The events leading up to that

decision are more fully set out in this Court's decision which affirmed in part and

reversed in part that decision, *United States v. Roane*, 378 F.3d 382 (4th Cir.

2004), and the decision of this Court on the direct appeal, *United States v. Tipton*,

90 F.3d 861 (4th Cir. 1996). The significant events leading up to the instant

motion may be summarized as follows:

James H. Roane, Jr. was a principal partner of Richard Tipton and Cory Johnson in a substantial drug trafficking conspiracy that lasted from 1989 through 1992. Over a short span of time in early 1992, Tipton, Johnson and Roane were implicated in the murders of ten persons in the Richmond area, all in relation to their drug trafficking operation, and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug business, or because they personally offended one of the "partners." 90 F.3d at 868.

On the evening of January 13, 1992, Tipton and Roane went to the apartment of Douglas Moody, a suspected rival in their drug trafficking area where Tipton shot Moody twice in the back. After Moody fled by jumping through a window, both Tipton and Roane pursued. Roane, armed with a military style knife caught up with Moody in the front yard of the apartment where he stabbed him 18 times, killing him. *Id*.

On June 1, 1998, Roane and his co-defendants, all represented by appointed counsel, filed separate motions for relief pursuant to 28 U.S.C. §2255 asserting a variety of claims. The government moved for summary judgment, and in June 1999, the defendants sought leave to conduct discovery. The district court granted

leave to defendant Tipton to conduct forensic testing of a knife in connection with the Moody murder of which both Tipton and Roane had been found guilty.

On June 21, 2002, the district court conducted an evidentiary hearing on Roane's claim that trial counsel had rendered ineffective assistance.  Roane and his girlfriend, Sandra Reavis, both testified that they were together at the time of the Moody murder and thus Roane could not have killed Moody.  In addition, Gina Taylor, who had testified at trial that Roane was not involved in the Moody murder, again testified that Roane was not involved, but the district court recited three reasons why her testimony was not credible.  378 F.3d at 393.  The district court concluded that Roane's testimony was "tenable but not compelling," that Reavis' testimony was "flat and unpersuasive" and that a "new" witness, Demetrius Rowe, whom habeas counsel had located some 12 years after the murder and who testified at the habeas hearing that Roane was not present when Moody was murdered, was "not credible" and her testimony "would carry no weight with a jury." *Id.*

The district court denied relief on Roane's claim that he was actually innocent of the Moody murder, but granted relief on a finding that his trial counsel had been ineffective in not properly investigating Roane's alibi defense to the Moody murder.  378 F.3d at 394-95.  On August 29, 2004, this Court affirmed the

district court's decision denying Roane's actual innocence claim, but reversed the decision that counsel had been ineffective, concluding that trial counsel's performance was not deficient.  378 F.3d at 409-411.

On October 3, 2005, the Supreme Court denied certiorari.  *Johnson v. United States*, 546 U.S. 810 (2005).

Shortly thereafter,  Roane and his co-defendants filed suit in United States District Court for the District of Columbia seeking a determination that the lethal injection protocol used by the Bureau of Prisons violated the Fifth and Eighth Amendments.  *Roane v. Gonzalez*, No. 1:05cv2337.  Despite the Supreme Court's decision over a year ago in *Baze v. Rees*, 128 S. Ct. 1520 (2008), that case remains pending.

2.     Amicus state at p. 3 of their brief that they "address the single issue of whether the AEDPA's one-year statute of limitations can procedurally bar Mr. Roane from obtaining habeas review despite credible and substantial evidence of Mr. Roane's actual innocence."  While the government is submitting a separate response to Mr. Roane's own motion filed in this Court for leave to file a successive habeas petition, the government submits in response to the arguments made by Amicus, that under the facts of this case, this Court, and not the district court, is the appropriate court in which to consider the application of the statute of

limitations, and the Court should find that a successive petition is barred by the statute.

3.      Amicus acknowledge that the sole issue before this Court is whether to certify Mr. Roane's second habeas petition to the district court and that the analysis is governed by 28 U.S.C. §2255(h) and 2244(b).  As noted above, whether the allegedly newly discovered evidence meets the statutory tests that 1) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and 2) if proven, no reasonable juror would have found the defendant guilty,[1] is addressed in the separate memorandum filed this date by the United States.  The purpose of this memorandum is to rebut the arguments made by Amicus that the statute of limitations issue must be considered by the district court in the first instance.

It is important to note that if the Court denies Mr. Roane's own motion to file his successive petition as the government urges because the Court concludes that he has not satisfied each prong of the test recited in the preceding paragraph, the position advanced by Amicus is moot, and the Court must decline the invitation of Amicus to create a rule which would have no effect on the outcome

_____

[1] *See* 28 U.S.C. §2244(b)(2)(B).  Section 2255(h) incorporates §2244 by stating that "A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals . . ."

of this case.

4. The government acknowledges that in many instances, the statute of limitations issue will necessarily be presented to the district court in the first instance, but under the theory advanced by Amicus, every successive petition that is also time barred would be entitled to district court consideration which necessarily defeats the very reason that Congress enacted the AEDPA. Indeed, Congress specifically wrote into the AEDPA a requirement that,

> Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. §2244(b)(3)(A).

If every applicant seeking permission to file a successive petition is entitled to consideration of that petition in the district court where the government may assert the statutory one-year limitations period found at 28 U.S.C. §2255(f), the requirement of §2244(b)(2)(B) that the court of appeals authorize the filing of any successive petition is effectively written out of the statute. The government submits that in addition to failing to meet the statutory requirement of being premised on newly discovered evidence which could not have been discovered through the exercise of due diligence, Mr. Roane's petition is time barred, and

§2244(b)(3)(C) precludes this Court from authorizing the filing of a successive petition. That provision of the AEDPA provides:

> The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this sub-section.

If Congress had intended that every time barred claim be submitted to the district court in the first instance, it would not have written the statute to require movants to seek permission from the court of appeals. The AEDPA in general, and this provision in particular, were obviously written to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases and to further the principles of finality. *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). A practice whereby an obviously time barred petition must be presented to the district court for the government to assert the statute of limitations defense and then require a ruling by the district court defeats one of the primary purposes of the AEDPA when it is the court of appeals that Congress charged with exercising this important screening function. While factual development is generally best reserved for district courts, the factual allegations in a habeas petition are generally deemed true for purposes of deciding whether an evidentiary hearing is required, or the petition may be disposed of on the pleadings. *See Wolfe v.*

*Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). In the instant case, the record is sufficiently developed for this Court to conclude that the factual predicate for Mr. Roane's claim, as detailed in the government's accompanying memorandum in response to Mr. Roane's motion, could have been discovered previously through the exercise of due diligence. Accordingly, the Court should reject adopting the rule that Amicus seek to apply that every statute of limitations issue necessarily requires district court consideration in the first instance.

5. The authorities cited by Amicus in their brief are distinguishable from the facts of the instant case, and binding precedent from this Court counsel against a rule that only the district court may consider application of the one year statute of limitations. Amicus rely on *In re Williams*, 444 F.3d 233, 237 n.* (4th Cir. 2006), for the proposition that it is preferable for the district court to consider in the first instance the timeliness of a habeas petition, including the question of equitable tolling. However, in that case, this Court held that Williams' petition was not a second or successive petition and as such dismissed the case because no permission of the court of appeals was required for Williams to file his habeas petition. By dismissing the case, the court of appeals necessarily allowed Williams to file his habeas petition in the district court, and the Court simply commented that "we think it doubtful that the timeliness of any such petition is

8

properly before us at this time." *Id.* But Judge Widener took the opportunity to

remind us why the AEDPA was enacted in the first place:

> The rules governing second or successive habeas petitions in general, and § 2244 in particular, are grounded in principles of comity and respect for the finality of criminal convictions. *See, e.g., McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) ("[T]he doctrines of procedural default and abuse of the writ are both designed to lessen the injury to a State that results through reexamination of a state conviction on a ground that the State did not have the opportunity to address at a prior, appropriate time; and both doctrines seek to vindicate the State's interest in the finality of its criminal judgments."); *United States v. Barrett*, 178 F.3d 34, 44 (1st Cir.1999) ("The core of the AEDPA restrictions on second or successive § 2255 petitions is related to the longstanding judicial and statutory restrictions embodied in the form of res judicata known as the 'abuse of the writ' doctrine."). *See generally Felker v. Turpin*, 518 U.S. 651, 663-64, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (describing the place of § 2244 in the evolution of the abuse of the writ doctrine). It would ill-serve these important principles to allow a habeas petitioner a second bite at the apple with respect to claims that have already been denied on the merits, regardless of the petitioner's success on an appeal claim.

444 F.3d at 236. [2]

---

[2] While *Willams* was a §2254 case, this Court noted that for purposes of deciding claims of abuse of the writ or successive petitions, the distinction between §2254 and §2255 cases is often immaterial:

> To begin, there is no reason why it should matter, for abuse of the writ purposes,
>
> whether the petitioner is a state or federal prisoner. This court and others have repeatedly cited § 2254 and § 2255 cases interchangeably in such circumstances. *See, e.g., In re Taylor*, 171 F.3d 185, 187-88 (4th Cir.1999); *see also Andiarena v. United States*, 967 F.2d 715, 717 (1st Cir.1992) (per curiam) (rejecting distinction between § 2254 and § 2255 for purposes of abuse of the writ doctrine). Indeed,

Likewise, *McMillan v. Jarvis*, 332 F.3d 244, 248 (4th Cir. 2003), is unavailing as it is sufficiently distinguishable from the instant case. There, the Court noted that because the state bears the burden of asserting a statute of limitations defense under §2244(d), a habeas petitioner is under no obligation to allege facts in anticipation of an affirmative defense that has not yet been raised. But that case involved a situation where an initial petition for relief had been filed in the district court which *sua sponte* dismissed the petition as time barred. It was therefore appropriate to require the government to assert the statute of limitations defense, and for the petitioner to be given an opportunity to respond. But in the instant case, Congress has provided not only a one-year period of limitations tied to certain key events in the progress of the case, but also a requirement that a movant obtain permission from this Court before the district court may even consider the (successive) petition. In other words, when a petitioner seeks to raise his claim again or to raise new claims that were not previously presented to the district court, §2244(b)(3)(B) shifts the burden to the petitioner to establish "that

---

> *Goddard* itself relied on several cases involving habeas petitions pursuant to §
> 2254 in concluding that Goddard's motion under § 2255 was not second or
> successive. *See Goddard*, 170 F.3d at 438.

444 F.3d at 235.

10

the application makes a prima facie showing that the application satisfies the requirements of this sub-section." And *McMillan* went on to conclude that "a district court may still raise the limitations period when the state has failed to do so or before it has an opportunity to do so- *Hill* requires only that the court invite the petitioner to articulate a reason that the action should not be dismissed as untimely." 332 F.3d at 249. Here, Mr. Roane will have ample opportunity to articulate in this Court why his successive petition is not time barred.

Amicus cite *United States v. Blackstock*, 513 F.3d 128, 133 (4th Cir. 2009), for the proposition that it would be "improper" for the court to render judgment on the statute of limitations without providing an opportunity to present evidence in the district court. The government submits that *Blackstock* did not go as far as Amicus would imply. That case, like *McMillan*, turned on the question of how to interpret a prior petition, i.e., whether the prior petition was intended by the prisoner as a collateral attack, or some other sort of motion.[3] *Blackstock* simply held that "the exception to the notice requirement recognized by this court in [*United States v.*] *Emmanuel*, [288 F.3d 644 (4th Cir. 2002)] did not survive the Supreme Court's opinion in *Castro*." 513 F.3d at 135. It is true that the Court

---

[3] *See Castro v. United States*, 540 U.S. 375 (2003)(prisoner entitled to notice that court intended to re-characterize motion as one seeking habeas relief which would thus bar subsequent petitions in most circumstances).

rejected the government's argument that Blackstock's §2255 petition would have been time barred when originally filed, but this Court simply noted that, "It does not appear from the information before us that the AEDPA's one-year limitations period would prevent Blackstock from obtaining relief under §2255 . . ." That was true because the petition under review had been dismissed by the district court without a response from the government, and "Blackstock therefore has had no opportunity to come forward with evidence which might justify the application of equitable tolling or otherwise establish that his claims are not time-barred." 523 F.3d at 133.

Again, the instant case is distinguishable because, unlike Blackstock and McMillan, Mr. Roane has had a full opportunity to litigate every issue he sought to raise in his initial petition, and was even granted a certificate of appealability that allowed this Court to review the decision of the district court whereas the petitioners in the cited cases had never had an opportunity to have their equitable tolling claims considered on the merits. Moreover, Mr. Roane, with the assistance of counsel, has had four years since the Supreme Court last considered his case, to come up with a barrage of affidavits, recantations and expert opinions, all of which have been presented to this Court to support his successive petition application. His counsel have obviously prepared for and presented this Court

with the evidence "which might justify the application of equitable tolling or otherwise establish that his claims are not time-barred." *Id.*

This Court has before it all of the information that the district court would have to determine whether the instant petition is time barred. Mr. Roane has presented his "newly discovered" evidence and briefed the issues, and the government has responded. Other than injecting more delay into a process that took seven years from the filing of the original §2255 petition to the Supreme Court denying certiorari, nothing is accomplished by sending the case back to the district court to consider in the first instance a question which this Court is perfectly capable of resolving. Such a procedure would nullify the important gatekeeping function which Congress created for successive petitions and delegated exclusively to the court of appeals.

6. Amicus argue that other courts have held or at least suggested that equitable tolling claims based on an actual innocence assertion should be handled by the district court first determining whether petitioner has presented a "credible" claim of innocence. Three cases are cited on p. 6 of Amicus' brief for this proposition. An examination of each case suggests that it will not bear the weight that Amicus seek to place on the decision.

In *Whitley v. Senkowski*, 317 F.3d 233, 225 (2nd Cir. 2003), the court was

faced with yet another situation common to so much of the authority in this area of a pro se litigant whose claim of actual innocence was dismissed by a district court without any analysis of whether the movant could mount an equitable tolling argument sufficient to avoid the effect of the one-year statute of limitations. When directed by the district court to show cause why his petition was not time barred, Whitley had simply stated, "Your Honor, I am innocent . . ." 317 F.3d at 225. The district court thereafter granted the state's motion to dismiss the petition as untimely under the AEDPA. "The district court did not address Whitley's actual innocence claim." *Id.* The court of appeals had no choice but to remand the case to the district court "to decide as a matter of fact whether Whitley has presented a credible claim of innocence." *Id.* But in the instant case, Mr.Roane's petition is a successive one, and he has been represented throughout by counsel. All of the information supporting his claim of actual innocence is before this court. No useful purpose would be achieved by sending the case to the district court for initial consideration.

Amicus also rely on *Souter v. Jones*, 395 F.3d 577, 588-96 (6th Cir. 2005), in support of their argument that other courts have suggested that the district court, in the first instance, should consider claims of actual innocence. While *Souter* contains an extensive discussion of the interplay between actual innocence and

equitable tolling, it does not specifically address whether only the district court may, in the first instance, consider an actual innocence claim to avoid the effect of the statute of limitations. In that case, the petitioner presented what amounted to recantation evidence by experts who had testified at trial. The district court had dismissed the petition on the state's motion for summary judgment, holding that Souter's claim was time barred, but the district court apparently had considered Souter's "new evidence" and the Sixth Circuit's decision was merely a reversal of the determination that Souter's claim was time barred. The case originated in the district court as an original petition, and there is nothing in the opinion that suggests the court of appeals found the "proper procedure for adjudicating an assertion of equitable tolling based on a claim of actual innocence is to have the district court determine first whether petitioner has presented a 'credible' claim of actual innocence." Amicus Brief at 6.

Amicus also cite *Wyzykowski v. Department of Corrections*, 226 F.3d 1213, 1218 (11th Cir. 2000), for the same proposition. But like the other two cases cited for this same proposition, this case also originated in the district court, that court dismissed the §2254 petition as time barred, and the court of appeals reversed on the ground that equitable tolling applied under the facts of the particular actual innocence claim. Like the other cases cited above, the district court failed to

address the petitioner's claims of actual innocence, and the court of appeals remanded the case to the district court to do so.  The need for remand was due to the fact that the state had not filed in the district court the record of the original state proceedings, and "thus there is a complete absence in the record on appeal concerning whether Wyzykowski could make a showing of actual innocence." 226 F.3d at 1219.

What distinguishes all three of the cited cases from the instant one is that none of those cases involved an application for leave to file a successive  petition. All were simply direct appeals from district court decisions where the statute of limitations was found to bar the filing of an initial petition.  Thus it is simply incorrect to say that these cases support the proposition that these circuits hold or even endorse the notion that all equitable tolling claims must be presented to the district court in the first instance.  In each case, the district court was ruling on an initial petition, the court found the case was time barred, and the court of appeals simply remanded the case for consideration of the application of the equitable tolling doctrine.  That is far different from the instant case where Mr. Roane has already had a thorough airing of his claim of actual innocence, which the district court found deficient.  It is in the context of a second petition which, in large part raises claims identical to those previously rejected, that Mr. Roane now needs to

16

rely on equitable tolling to avoid the effect of the one-year limitations period. In this situation, it is entirely permissible to require one seeking a second collateral attack on a presumptively valid conviction to "meet a significantly greater burden to pass through the gateway . . ." *Souter*, 395 F.3d at 600.

The position advanced by Amicus that district courts in the first instance must evaluate all equitable tolling claims, ignores the distinction between an initial petition and a successive §2255 or §2254 petition. Congress has mandated a screening requirement by the court of appeals for the latter situation, but not the former. The argument eviscerates §2255(h) and the incorporated requirements of §2244(b) which require the court of appeals, not the district court, to authorize the filing of a successive petition. The notion that this decision is reserved exclusively to the court of appeals is reinforced by sub-sections (A) through (D) of 28 U.S.C. §2244(b)(3) which speak only in terms of the authority of the court of appeals to authorize the filing of a second or successive application for relief. While the government's accompanying memorandum discusses the application of the statute to Mr. Roane's case and those arguments need not be repeated here, it is sufficient to note that neither this Court, nor any other court of appeals, has ever held that equitable tolling claims raised in a second or successive petition should be considered in the first instance by the district court. Even *Wolfe v. Johnson*,

17

*supra.* does not suggest otherwise. That case noted that the petitioner was entitled

to have his claim of actual innocence assessed by the district court, 565 F.3d at

164, but the holding in that case turned on the fact that the district court had

simply failed to ever address certain of Wolfe's claims of innocence which had

been presented in an initial §2254 petition. Thus the case warranted a remand so

that certain claims of actual innocence could be considered by the district court

which had failed to address them in the first instance.

Amicus seek to re-write the statute by delegating to the district court

determinations which Congress has clearly and exclusively given to the court of

appeals. This Court's en banc decision in *Rouse v. Lee*, 339 F.3d 238, 253 (4th Cir.

2003)(en banc) states:

> by enacting the AEDPA, Congress has balanced the competing
> interests – a balance embodied in section 2244(d), which provides a
> 1-year limitation period and explicitly specifies conditions under
> which that period should be tolled. We may not amend that statute
> "through . . . ad hoc judicial exception." *Lonchar [v. Thomas],* 517
> U.S. [314], 328[ (1996)]. While we have already held that equitable
> tolling applies to the AEDPA when extraordinary circumstances
> beyond the petitioner's control prevent him from filing a timely
> petition, *see Harris,* 209 F.3d at 329-30, we must refrain from ad hoc
> alteration of the statutory command. The doctrine of equitable tolling
> is not a license to suspend enactments of Congress whenever we
> happen to believe that enforcement of a limitations period would
> create a hardship.

The government acknowledges that this Court has held that equitable tolling may

apply when extraordinary circumstances are present,[4] but for the reasons discussed in the accompanying memorandum, Mr. Roane's case does not present those extraordinary circumstances, and the fact specific arguments already made by Mr. Roane in his motion for leave to file his successive petition are best made by his own counsel.

While Amicus seek to dismiss *Rouse v. Lee* in a footnote,[5] the en banc majority in that case declined to adopt an equitable tolling test tied to the petitioner's underlying claim, and has thus stated that "appellate review does not change solely because a capital sentence is imposed." 339 F.3d at 254. The government submits that this Court need not take up the remaining arguments offered by Amicus as they extend beyond the facts presented in the instant case. This court need only conclude, as argued in the government's accompanying

[4] Amicus devote a consideration portion of their brief to arguing that the AEDPA's one year limitations period may be tolled for claims of actual innocence that meet the *Schlup* standard. The government does not contest that proposition which this Court resolved in *Harris v. Hutchinson*, 209 F.3d 325, 329-30 (4th Cir. 2000). Accordingly, no further discussion is required. Whether Mr. Roane has met the exacting standards of *Schlup* and *Harris* that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes" *Harris*, 209 F.3d at 330, cited in *Rouse*, 339 F.3d at 256-57, is addressed in the government's accompanying memorandum.

[5] The case involved a challenge to a death sentence where review was foreclosed because the petitioner's counsel was one day late in filing the §2254 petition. In the instant case, the successive petition which Mr. Roane now seeks to file was submitted approximately 10 years after the one-year limitations period prescribed by the AEDPA for filing a first petition expired and over 16 years after the trial of this case.

memorandum, that Mr. Roane has failed to carry his burden of showing that his successive petition meets the requirements of §2255(h) and the incorporated provisions of §2244(b). Once that determination is made, all of the issues raised by Amicus are moot and may not be considered by the Court.

WHEREFORE, the government prays the Court will decline the invitation of Amicus to address issues not necessary to the determination of Mr. Roane's case and will deny leave to Mr. Roane to file a successive petition.

Respectfully submitted this 10th day of September, 2009.

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____s/_____
G. Wingate Grant
Virginia Bar Number 18643
Attorney for the United States
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219-2447
Telephone - 804-819-5500
FAX - 804-771-2316
wingate.grant@usdoj.gov

ROBERT J. ERICKSON
Criminal Division/Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Room 1264
Washington, D.C. 20530
Telephone - 202 514-2841
Robert.erickson@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following CM/ECF users:

Billy H. Nolas, Esq.
Email: *william_nolas@fd.org*
Shawn Nolan, Esq.
Angela Elleman, Esq.
Email: *angela_elleman@fd.org*
Assistant Federal Defenders
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545 West - The Curtis Center
601 Walnut Street
Philadelphia, Pennsylvania 19106
(215) 928-0520

Paul F. Enzinna, Esq.
Baker Botts, LLP
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 639-7752
Email: *paul.enzinna@bakerbotts.com*

Charles B. Wayne
DLA Piper, LLP
500 8th Street, N.W.
Washington, D.C. 20004
charles.wayne@dlapiper.com

_____/s/_____
G. Wingate Grant
Assistant United States Attorney