IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____
                                                    :
IN RE JAMES H. ROANE, Jr., MOVANT          : No. 09-8
_____  :

### JAMES ROANE'S REPLY BRIEF IN SUPPORT OF MOTION FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER SECOND HABEAS PETITION UNDER § 2255

_____

James Roane, through counsel, has moved for authorization to file his second petition for a writ of habeas corpus under 28 U.S.C. § 2255 ("PFA Motion"). The Innocence Network has filed an amicus brief in support of Mr. Roane ("Amicus Brief"). The government has filed a response to Mr. Roane's PFA Motion ("Response to PFA Motion"), and a separate response to the Innocence Network's Amicus Brief ("Response to Amicus Brief"). Mr. Roane hereby files this reply addressing the government's arguments.[1]

### ARGUMENT:   THIS COURT SHOULD AUTHORIZE THE FILING OF A SECOND HABEAS PETITION

This Court should authorize the filing of a second habeas petition, for the reasons set forth in the PFA Motion, the Amicus Brief, and herein.

— A —

**1.**    The government says the PFA Motion should be denied because Mr. Roane "has made no effort to demonstrate" that he satisfies the "'due diligence'

_____

[1] Emphasis is supplied unless otherwise indicated. Parallel citations are omitted.

1

component of Section 2244(b)(2)(B)(i)." Response to PFA Motion at 27-28; <u>see generally</u> <u>id.</u> at 26-30. But § 2244(b)(2)(B)(i) simply **does not apply to § 2255 cases**.

Section 2244(b)(2)(B)(i) states: "A claim presented in a second or successive habeas corpus application under **section 2254** that was not presented in a prior application shall be dismissed unless ... the factual predicate for the claim could not have been discovered previously through the exercise of due diligence ...." Thus, by its express language, the § 2244(b)(2)(B)(i) "due diligence" requirement upon which the government relies applies **only** to **§ 2254** cases. It does **not** apply to **§ 2255** cases.

**2.** The government asserts that "Section 2255(h)(1) expressly incorporates the procedural requirements in Section 2244(b)(2) governing motions for leave to file second or successive petitions, which includes a specific due diligence requirement when an actual innocence claim is based on the existence of newly-discovered evidence." Response to PFA Motion at 43; <u>see also</u> Response to Amicus Brief at 5 n.1 (same). The government errs. Section 2255(h)(1) does **not** incorporate, expressly or otherwise, any part § 2244(b)(2).

Section 2255(h)(1) states:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain ... newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense[.]

Thus, § 2255(h)(1) does incorporate **some** parts of § 2244. However, § 2244(b), which **expressly applies only to § 2254 petitions**, is **not** one of the parts of § 2244

that § 2255(h)(1) incorporates.

Section 2244 contains several subsections, one of which expressly applies only to § 2255 cases, some of which, including § 2244(b)(2), expressly apply only to § 2254 cases, and some of which apply to both § 2254 and § 2255 cases.

Section 2244(a) expressly applies **only** to **§ 2255 cases**:

(a) No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a **court of the United States** if it appears that the legality of such detention has been determined by a **judge or court of the United States** on a prior application for a writ of habeas corpus, except as provided in **section 2255**.

28 U.S.C. § 2244(a).

Sections 2244(b)(1)-(2), (c) & (d), which include the sections upon which the government relies, expressly apply **only** to **§ 2254 cases**:

(b) (1) A claim presented in a second or successive habeas corpus application under **section 2254** that was presented in a prior application shall be dismissed.
(2) A claim presented in a second or successive habeas corpus application under **section 2254** that was not presented in a prior application shall be dismissed unless
(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
\* \* \*
(c) In a habeas corpus proceeding brought in behalf of a person in

custody pursuant to the judgment of a **State court**, a prior judgment of the Supreme Court of the United States on an appeal or review by a writ of certiorari at the instance of the prisoner of the decision of such **State court**, shall be conclusive as to all issues of fact or law with respect to an asserted denial of a Federal right which constitutes ground for discharge in a habeas corpus proceeding, actually adjudicated by the Supreme Court therein, unless the applicant for the writ of habeas corpus shall plead and the court shall find the existence of a material and controlling fact which did not appear in the record of the proceeding in the Supreme Court and the court shall further find that the applicant for the writ of habeas corpus could not have caused such fact to appear in such record by the exercise of reasonable diligence.

(d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a **State court**. The limitation period shall run from the latest of–

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for **State post-conviction** or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. 2244(b)(1)-(2), (c) & (d).

Finally § 2244(b)(3)-(4) applies to **both § 2254 cases and § 2255 cases**:

(3)     (A) Before a second or successive application permitted by this

section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

(D) The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion.

(E) The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.

(4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

28 U.S.C. § 2244(b)(3)-(4).

Taken together, § 2244 and § 2255 establish a comprehensive scheme governing successive petitions under § 2254 and § 2255.

The **substantive** standard for a successive § 2255 petition is governed by § 2244(a), which expressly incorporates § 2255(h)'s substantive standard for successive § 2255 petitions and which does **not** include "due diligence" language.

The **substantive** standard for a successive § 2254 petition is governed by § 2244(b), which **does** include "due diligence" language.

The **procedural mechanism** for filing successive petitions under both § 2254 and § 2255 is governed by § 2244(b)(3), which requires pre-filing authorization from

the Court of Appeals.

Thus, § 2255(h)(1) requires a § 2255 petitioner to follow the same pre-filing authorization **procedures** as a § 2254 petitioner – seeking permission from the Court of Appeals – but the **substantive** showing required for § 2255 petitioners is § 2255(h)(1), as incorporated in § 2244(a), while the **substantive** showing required for § 2254 petitioners is governed by § 2244(b). Section 2255(h)(1) does **not** incorporate any part of § 2244(b), including its "due diligence" requirement.

3.      Because the standard for successive § 2254 petitions expressly includes a "due diligence" requirement, while the standard for successive § 2255 petitions does not, it would violate basic principles of statutory construction to read a "due diligence" requirement into the standard governing successive § 2255 petitions. Russello v. United States, 464 U.S. 16, 22 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted).

Moreover, given the evidence of Mr. Roane's innocence, reading a "due diligence" requirement into the standard governing successive § 2255 petitions, and applying that requirement to deny review to Mr. Roane, would raise grave constitutional concerns, as set forth in the PFA Motion at 15-16. Thus, if this Court has any inclination to read a "due diligence" requirement into the standard governing successive § 2255 petitions, it should allow the District Court to hear the evidence of innocence and make appropriate findings.

6

The United States Supreme Court has endorsed the approach we suggest, in a decision handed down after Mr. Roane filed his PFA Motion. See In re Davis, — S.Ct. —, 2009 WL 2486475 (U.S. Aug. 17, 2009) ("Davis-2"). In Davis-2, a capital habeas case brought by a state prisoner, the Supreme Court ordered the district court to hold an evidentiary hearing on Mr. Davis' claim of innocence, brought in a successive § 2254 petition.

In Davis, the Eleventh Circuit Court of Appeals declined to authorize the filing of a second § 2254 petition, holding that it was prohibited from doing so by several of AEDPA's provisions, including § 2244(b)(2)(B)(i)'s "due diligence" requirement, which applied to Mr. Davis because he was a state prisoner. In re Davis, 565 F.3d 810, 819-22 (11th Cir. 2009) ("Davis-1"). Circuit Judge Barkett dissented – she would have allowed the filing because

> AEDPA cannot possibly be applied when to do so would offend the Constitution and the fundamental concept of justice that an innocent man should not be executed.
>
> \*   \*   \*
>
> There is no question that, even pre-AEDPA, the procedural obstacles to filing a second or successive habeas petition were considerable. See generally Schlup, 513 U.S. at 317-19. Nonetheless, the Supreme Court has "consistently reaffirmed the existence and importance of the exception for fundamental miscarriages of justice." Id. at 321. And, particularly relevant in the present case, the Court has recognized that "[t]he quintessential miscarriage of justice is the execution of a person who is entirely innocent." Id. at 324-25. Thus, where a defendant who can make a viable claim of actual innocence is facing execution, the fundamental miscarriage of justice exception should apply and AEDPA's procedural bars should not prohibit the filing of a second or successive habeas petition.

Davis-1, 565 F.3d at 827, 831 (Barkett, J., dissenting).

7

The United States Supreme Court agreed with the Eleventh Circuit dissenter that Mr. Davis should have an evidentiary hearing in the district court. Davis-2.

Justice Stevens, writing in support of the Supreme Court's ruling, explained that the "substantial risk of putting an innocent man to death clearly provides an adequate justification for holding an evidentiary hearing." Davis-2, 2009 WL 2486475 at *1 (Stevens, J., joined by Ginsburg & Breyer, JJ., concurring).

With respect to barriers to review and relief apparently posed by AEDPA, Justice Stevens noted that the District Court

> may ... find it relevant to the AEDPA analysis that Davis is bringing an "actual innocence" claim. See, e.g., Triestman v. United States, 124 F.3d 361, 377-380 (C.A.2 1997) (discussing "serious" constitutional concerns that would arise if AEDPA were interpreted to bar judicial review of certain actual innocence claims); Pet. for Writ of Habeas Corpus 20-22 (arguing that Congress intended actual innocence claims to have special status under AEDPA). Even if the court finds that [an AEDPA barrier] applies in full, it is arguably unconstitutional to the extent it bars relief for a death row inmate who has established his innocence. Alternatively, the court may find in such a case that the statute's text is satisfied, because decisions of this Court clearly support the proposition that it "would be an atrocious violation of our Constitution and the principles upon which it is based" to execute an innocent person. [Davis-1,] 565 F.3d at 830 (Barkett, J., dissenting).

Davis-2 at *1 (Stevens, J., joined by Ginsburg & Breyer, JJ., concurring).

This Court should take the same approach to Mr. Roane's case that the Supreme Court took in Davis. Here, as in Davis, the "substantial risk of putting an innocent man to death clearly provides an adequate justification for holding an evidentiary hearing." Davis-2 at *1 (Stevens, J., joined by Ginsburg & Breyer, JJ., concurring). This Court should authorize the filing so the District Court can hold an hearing and

8

make appropriate findings.

— B —

The government erroneously asserts that Mr. Roane cannot make the "prima facie showing" of innocence required by §§ 2244(b)(3)(C) & 2255(h). <u>See</u> Response to PFA Motion at 30-43. As set forth below, the government's errors are highlighted by the Supreme Court's recent decision in <u>Davis</u>.

Mr. Roane's "prima facie showing" of innocence is set forth in the proposed § 2255 Petition. As summarized in the PFA Motion:

> Mr. Roane's proffer establishes that Keith Barley, not Mr. Roane, killed Douglas Moody. The proffer of new evidence includes a disinterested eyewitness who will testify that she saw Keith Barley, not Mr. Roane, kill Mr. Moody; three witnesses, including Mr. Barley's best friend, who will testify that Mr. Barley confessed to them that he killed Mr. Moody because Mr. Moody owed Mr. Barley money for drugs; a witness who will testify that Mr. Barley, with gun in hand, kicked in a door looking for Mr. Barley an hour before the killing, seeking to collect on a drug debt; and several witnesses who will testify that Mr. Barley was a violent drug dealer who worked as an "enforcer" for drug dealer Peyton Maurice Johnson.
>
> Mr. Roane's proffer also establishes that the three government trial witnesses who connected Mr. Roane to the Moody murder are incredible and could not have been testifying truthfully. The proffer of new evidence includes strong new impeachment information for each witness, and objective scientific and factual evidence establishing that these witnesses could not have been telling the truth when they implicated Mr. Roane in the Moody murder.
>
> In addition to showing that Mr. Roane is entirely innocent of the Moody murder, Mr. Roane's proffer also establishes that Mr. Roane is innocent of "capital murder," ... even if it is falsely assumed that Mr. Roane killed Mr. Moody.
>
> Mr. Roane's death-eligibility for the Moody murder was premised upon 21 U.S.C. 848(e)(1)(A), which states that "any person engaging in or working in furtherance of a continuing criminal enterprise ... who

9

intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results ... may be sentenced to death." The government cannot establish § 848(e)(1)(A) merely by showing that the defendant committed a murder while he was part of a continuing criminal enterprise ("CCE"). Instead, the government must prove there was a "*substantive connection*" between the killing and the CCE, i.e., that the killing was committed "*in furtherance of the CCE's purposes*."... At trial, the government claimed that the "substantive connection" to the CCE, establishing death-eligibility under § 848(e)(1)(A), was that Mr. Moody was a rival drug dealer and that Mr. Roane and Mr. Tipton killed Mr. Moody for that reason.

Petitioner's proffer of new evidence shows that Mr. Moody was *not* a rival drug dealer – he was not a drug dealer at all. Instead, he was a drug addict who was killed by Keith Barley because he owed Mr. Barley money for drugs. Thus, the new evidence shows Mr. Moody's murder had no "substantive connection" to the CCE for which Mr. Roane was convicted and, thus, Mr. Roane is innocent of capital murder, even if it is falsely assumed that Mr. Roane killed Mr. Moody.

The trial evidence for Mr. Roane's guilt of the Moody murder "was neither undisputed nor overwhelming." District Court Opinion of May 1, 2003, at 10. At the first § 2255 hearing, Mr. Roane presented evidence supporting an alibi, further undermining confidence in Mr. Roane's guilt. Mr. Roane's proffered "newly discovered evidence ..., if proven and viewed in light of the evidence as a whole" will "establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of the offense" of killing Douglas Moody. Mr. Roane should be afforded an evidentiary hearing in the District Court at which he can present, and the District Court can assess, his evidence of innocence.

PFA Motion at 5-8.

Mr. Roane's proffer of innocence is at least as compelling as that in Davis, where the Supreme Court ordered an evidentiary hearing. In Davis, "**four eyewitnesses** to Officer MacPhail's murder **testified at the trial and identified Davis as the shooter**: Steve Sanders, Harriet Murray, Antoine Williams, and Dorothy

10

Ferrell." Davis-1 at 825.

The first eyewitness, Steve Sanders, ... unambiguously identified Davis as the shooter, and did not back off of his identification when he was pressed on cross-examination, testifying that "you don't forget someone that stands over and shoots someone." **Sanders has submitted *no* post-trial affidavit altering his eyewitness account**.

Another eyewitness, Harriet Murray ... was a friend of Larry Young, the homeless man who was struck by Officer MacPhail's shooter. At trial, Murray testified that she had identified Davis from the pictures the police had shown her as the man who "hit Larry and shot the police," and that when she saw Davis's picture she was "real shaked up." Notably, she also identified Davis as the shooter in a courtroom identification. ... [E]ven if we were to consider Murray's 2002 *unsworn* affidavit, in it **she does not back off of her courtroom identification of Davis as being the shooter**. It simply adds an inconsistency concerning whether the shooter verbally threatened Larry Young before striking him. ... [E]ven considering Murray's unsworn affidavit, **both Sanders and Murray unambiguously identified Davis as the shooter of Officer MacPhail, and their identifications remain intact**.

The two other eyewitnesses, Williams and Ferrell, also identified Davis at trial as having shot and killed Officer MacPhail. According to their post-trial affidavits, they have recanted their identifications, but all that they now declare is that they did not see who the shooter was or what he was wearing. ...

Davis also points to several post-trial affidavits averring that Red Coles confessed to Officer MacPhail's murder. Yet, at trial, the jury heard Davis and Coles give conflicting testimony: Coles identified Davis as the one who hit Larry Young in the head, and Davis testified that Coles hit Young in the head. Neither, however, identified the other as the shooter. The jury chose to believe Coles. But even if we were to wholly discount Coles's testimony, Davis's trial testimony still squarely conflicts with the testimony of various witnesses, including Sanders, Murray, and even Larry Young, who testified that the only man who spoke that night was the one arguing with him, while Davis testified that he twice told Coles to stop bothering the man. In addition, Davis's testimony also squarely conflicts with the testimony of Red Coles's sister, Valerie Coles, who testified that Davis had come to her house to change shirts after the shooting, while Davis testified that he had never

been to her house.

All told, the testimony by Murray and Sanders remains; the two other eyewitnesses do not now implicate anyone, much less Coles; Coles continues to implicate Davis; and the testimony of Larry Young and Valerie Coles still collides with Davis's.

Davis-1 at 825-26.

Especially in light of the record in Davis, the government's argument's fail.

**1.** The government believes Mr. Roane's case for innocence is weak because "the core of his actual innocence claim – that drug dealer Keith Barley had a motive to kill Moody and that an eyewitness to the crime stated that Moody was killed by a slightly-built individual, and not by Roane – was presented at trial and evidently rejected by the jury"; and because "Roane later unsuccessfully asserted his actual innocence of the Moody murder in his initial Section 2255 petition." Response to PFA Motion at 1; see also id. at 32-33 (criticizing Mr. Roane's innocence evidence because it is consistent with the "strong misidentification defense" presented at trial, and with additonal evidence of innocence presented in the first § 2255 proceedings).

The government's argument is illogical. The consistency with which Mr. Roane has asserted his innocence makes that claim **stronger**, not weaker.

From the time he was accused of killing Mr. Moody, Mr. Roane consistently has denied that he did so. While awaiting trial, Mr. Roane repeatedly told his lawyer "he did not participate in the murder of Moody," and counsel "was convinced that Roane did not participate in the Moody murder," particularly given that Mr. Roane was "candid about his participation in other crimes." United States v. Roane, 378 F.3d 382, 393-94, 410 (4th Cir. 2004). Mr. Roane's defense at trial was that he did

12

not kill Mr. Moody and that someone else, possibly Keith Barley, did. During the first § 2255 proceedings, Mr. Roane continued to profess his innocence. This is not a case where a defendant who has unsuccessfully attempted one defense suddenly comes up with a different one. Mr. Roane's case is a much stronger case for its consistency.

Morever, the government's argument is inconsistent with the Supreme Court's ruling in Davis, where Mr. Davis' "claim of 'actual innocence' [was] the **same defense Davis raised at trial** but now allegedly supported by new corroborating affidavits," Davis-2 at *2 (Scalia, J., dissenting); and where Mr. Davis also unsuccessfully asserted that same innocence claim in his **first § 2255 proceedings**, Davis-1 at 814, 819. Here, as in Davis, there should be an evidentiary hearing.

2.    The government notes that the District Court in Mr. Roane's first § 2255 proceedings rejected an **earlier** innocence claim. E.g., Response to PFA Motion at 2, 32-33. Again, that makes Mr. Roane's case indistinguishable from Davis, in which "[a] State Supreme Court, a State Board of Pardons and Paroles, and a Federal Court of Appeals ha[d] all considered the evidence Davis ... present[ed] and found it lacking." Davis-2 at *3 (Scalia, J., dissenting):

> The Georgia Supreme Court ..., [a]fter analyzing each of Davis's proffered affidavits and comparing them with the evidence adduced at trial, ... concluded that it was not probable that they would produce a different result.
> When Davis sought clemency before the Georgia Board of Pardons and Paroles, that tribunal ... "spent more than a year studying and considering [his] case." It "gave Davis' attorneys an opportunity to present every witness they desired to support their allegation that there is doubt as to Davis' guilt"; it "heard each of these witnesses and questioned them closely." It "studied the voluminous trial transcript, the

13

police investigation report and the initial statements of the witnesses," and "had certain physical evidence retested and Davis interviewed." "After an exhaustive review of all available information regarding the Troy Davis case and after considering all possible reasons for granting clemency, the Board ... determined that clemency is not warranted."

> After reviewing the record, the Eleventh Circuit came to a conclusion "wholly consonant with the repeated conclusions of the state courts and the State Board of Pardons and Paroles."

Id. at *4-*5 (citations omitted). Indeed, Mr. Roane's case for an evidentiary hearing is much stronger than that presented in Davis, because Mr. Roane's current innocence proffer is much more subtantial than the one earlier rejected by the District Court.

— C —

As set forth in the PFA Motion and the Amicus Brief, there is no statute of limitations barrier to this Court's authorization for filing Mr. Roane's second § 2255 petition. See PFA Motion at 8-17; Amicus Brief.

The government makes several arguments about the statute of limitations, see Response to PFA Motion at 43-45; Response to Amicus Brief, but those arguments are mooted by the following concession made by the government:

> Amicus devote a consideration [sic] portion of their brief to arguing that the AEDPA's one year limitations period may be tolled for claims of actual innocence that meet the Schlup standard. The government does not contest that proposition which this Court resolved in Harris v. Hutchinson, 209 F.3d 325, 329-30 (4th Cir. 2000). Accordingly, no further discussion is required.

Response to Amicus Brief at 19 n.4.

Because the "government does not contest that" a Schlup innocence showing tolls the limitations period, the appropriate approach under the circumstances of this

14

case – where a District Court hearing already is appropriate on the § 2255(h)(1) innocence issue – is to allow the District Court to also make appropriate findings under Schlup.  See PFA Motion at 16-17.

## CONCLUSION

For the reasons stated in the PFA Motion, the Amicus Brief and herein, this Court should authorize the filing of Mr. Roane's second § 2255 petition.

Respectfully submitted,

/s/ Billy H. Nolas
BILLY H. NOLAS, ESQ.
SHAWN NOLAN, ESQ.
ANGELA ELLEMAN, ESQ.
Assistant Federal Defenders
Federal Community Defender Office
  for the Eastern District of Pennsylvania
Suite 545 West - The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

PAUL F. ENZINNA, ESQ.
Baker Botts, LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 639-7752

Counsel for Movant James H. Roane, Jr.

15

_____

:

IN RE JAMES H. ROANE, Jr., MOVANT            : No. 09-8

_____    :

## CERTIFICATE OF SERVICE

I, Billy H. Nolas, Esq., hereby certify that on this 17th day of September, 2009, I caused the above reply brief in the above-captioned case to be served by U.S. Mail, first class, on the following person:

Dana J. Boente
United States Attorney for the Eastern District of Virginia
600 E. Main Street
Suite 1800
Richmond, VA  23219

/s/ Billy H. Nolas
Billy H. Nolas, Esq.